UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

DEC - 5 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

**02CR1166**

vs.

ZIYAD SULEIMAN and
AMAL HIMOUZ

**DOCKETED**

**DEC 12 2002**

) Violations: Title 18, United
) States Code, Sections 513(a)
) 1344, and 2

*JUDGE HART*

**COUNT ONE**

*MAGISTRATE JUDGE ASHMAN*

The SPECIAL FEBRUARY 2002-2 GRAND JURY charges:

1.   At times material to this indictment:

(a)   The following banks were financial institutions,
described collectively herein as the "the victim banks," the
deposits of which were insured by the Federal Deposit Insurance
Corporation:  LaSalle Bank, Marquette National Bank, Fifth Third
Bank, Bank One, Mid America Bank, Charter One Bank, Harris Bank,
Greenwood Trust Bank, Woodforest National Bank, EFS National
Bank, Archer Bank, United Trust Bank, U.S. Bank, and TCF Bank.

(b)   Defendants ZIYAD SULEIMAN, AMAL HIMOUZ, and others
opened numerous bank accounts on behalf of furniture stores they
operated, including but not limited to the following:

| NAME OF BANK | TYPE OF ACCOUNT | DATE OF OPENING | ACCOUNT SIGNERS | NAME ON ACCOUNT | STORE ADDRESS GIVEN |
|---|---|---|---|---|---|
| LaSalle Bank | Business checking | July 29, 1997 | Ziyad Suleiman and Individual A[1] | Chicago Modern Furniture | 3454 West 79th Street, Chicago, IL |
| LaSalle Bank | Business checking | January 27, 1998 | Ziyad Suleiman | Chicago Furniture Corp. | 3452 West 79th Street, Chicago, IL |
| LaSalle Bank | Personal checking | May 1998 | Amal Himouz | Amal Himouz | N/A |
| LaSalle Bank (2 accounts) | Business checking | December 1998 | Ziyad Suleiman, Amal Himouz, and Individual A | Chicago Furniture Corp. #2 | 7450 South Cicero, Chicago, IL |
| Archer Bank | Business checking | February 24, 1999 | Amal Himouz and Individual A | Chicago Furniture Corp. #2 | 7450 South Cicero, Chicago, IL |
| Cole Taylor Bank | Business checking | March 12, 1999 | Ziyad Suleiman | Chicago Furniture Corp. #2 | 3452 West 79th Street, Chicago, IL |
| Cole Taylor Bank | Business checking | April 2, 1999 | Ziyad Suleiman, Amal Himouz, and Individual A | Chicago Furniture Corp. #2 | 7450 South Cicero, Bedford Park, IL |
| Marquette National Bank | Business checking | August 1999 | Amal Himouz | Chicago Furniture Corp. | 7452 South Cicero, Bedford Park, IL |
| Cole Taylor Bank | $10,000 Home Equity Line of Credit | August 1999 | Ziyad Suleiman | Ziyad Suleiman | N/A |
| Bank One | Business checking | September 14, 1999 | Amal Himouz and Ziyad Suleiman[2] | Chicago Furniture Corp. #2 | 7452 South Cicero, Bedford Park, IL |
| Archer Bank | Business checking | January 4, 2000 | Ziyad Suleiman and Amal Himouz | Chicago Furniture Corp. #2 | 7452 South Cicero, Bedford Park, IL |

---

[1]Individual A is defendant SULEIMAN's brother.

[2]Defendant SULEIMAN's name was added to the signature card on December 31, 1999.

| NAME OF BANK | TYPE OF ACCOUNT | DATE OF OPENING | ACCOUNT SIGNERS | NAME ON ACCOUNT | STORE ADDRESS GIVEN |
|---|---|---|---|---|---|
| Archer Bank | Business checking | March 2000 | Ziyad Suleiman and Amal Himouz | Chicago Furniture Corp. #2 | 7450 South Cicero, Chicago, IL |
| Fifth Third Bank | Business checking | June 28, 2000 | Amal Himouz | Windy City Trading | 8535 South Harlem Avenue |
| Archer Bank | Business checking | January 31, 2001 | Ziyad Suleiman and Amal Himouz | Royal Furniture, Inc. | 7450 South Cicero, Chicago, IL |
| Bank One | Business checking | June 18, 2001 | Amal Himouz | Royal Furniture, Inc. | 7450 South Cicero, Chicago, IL |
| TCF Bank | Business checking | August 2001 | Amal Himouz | Royal Furniture, Inc. | 7448 South Cicero, Bedford Park, IL |
| United Trust Bank | Business checking | August 2001 | Amal Himouz | Royal Furniture Outlet, Inc. | 7448 South Cicero, Bedford Park, IL |
| Mid America Bank | Business checking | November 2001 | Amal Himouz | Chicago Land Furniture, Inc. | 7450 South Cicero, Bedford Park, IL |
| Charter One Bank | Business checking | January 19, 2002 | Ziyad Suleiman and Individual A | District Furniture, Inc. | 8127 South Cicero, Chicago, IL |
| LaSalle Bank | Business checking | April 2002 | Ziyad Suleiman, using the alias "Zyad Solman" | District Furniture | 8127 South Cicero, Chicago, IL |

(c)   Chicago Furniture was a business operating at 7448, 7450, and 7452 South Cicero Avenue. On or about September 5, 2001, the business was renamed Royal Furniture.  Windy City Trading was an additional name used for the store on various occasions.

(d)   District Furniture was a business operating at 8127 South Cicero Avenue.

(e)   Chicago Furniture Styles was a business operating at 8535 South Harlem Avenue.   The business also used the name Windy City Furniture.

(f)   Chicago Land Furniture was purportedly a business operating at 7450 South Cicero, Bedford Park, Illinois. The business also used the names Furniture Chicago, Chicago Modern Furniture, and Chicago Style Furniture.

(g)   Merchant credit card terminals ("merchant terminals") were devices issued by banks ("merchant banks") and used by the furniture stores to allow customers to make purchases with credit cards.   Customer credit card numbers could be entered into the merchant terminals by swiping the cards through the machine or manually punching in the numbers.   After a credit card number and the amount of the purchase was entered, the merchant bank wired the amount of the purchase to the bank account designated by the individual or individuals applying for and operating the merchant terminal ("receiving bank").   When credit card numbers used for fraudulent purchases were entered manually, the merchant bank typically suffered the loss.   When credit card numbers used for fraudulent purchases were swiped into the machine, the bank issuing the credit card typically suffered the loss.

2.   Beginning at least as early as March 1998 and continuing thereafter until at least May, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

4

ZIYAD SULEIMAN and
AMAL HIMOUZ,

defendants herein, along with others known and unknown to the

Grand Jury, knowingly devised and participated in a scheme to

defraud the victim banks and to obtain money and funds owned by

and under the custody and control of the victim banks, by means

of materially false and fraudulent pretenses, representations,

promises, and omissions, which scheme is further described in the

following paragraphs.

3.    It was part of the scheme that defendants ZIYAD SULEIMAN

and AMAL HIMOUZ opened checking accounts at the victim banks in

the name of various furniture stores they operated.  On several

occasions, defendant SULEIMAN presented the victim banks with

false identification in the name "Zyad Solman," including a

counterfeit social security card.

4.    It was further part of the scheme that defendants

obtained money from the victim banks through several fraudulent

acts, including the following:  (a) forging signatures on stolen

checks and depositing the checks into their bank accounts at the

victim banks; (b) depositing checks written against what

defendants knew to be closed accounts or accounts with

insufficient funds; (c) applying for merchant terminals on behalf

of their furniture stores, using these terminals to process

fictitious credit card purchases, and directing the funds from

the fictitious purchases into bank accounts they controlled; (d)

unlawfully using the credit card numbers of individual victims

issued to the victims by various banks and other institutions;
and (e) unlawfully using identification information from
individual victims and using the stolen identification
information to obtain other goods and services and to create
forged checks, which defendants deposited into their bank
accounts.

5.   It was further part of the scheme that once defendants
deposited and caused to be deposited the funds from their
fraudulent activities, they would withdraw and cause to be
withdrawn the stolen funds within a short period of time.
Through this conduct, defendants defrauded and attempted to
defraud the victim banks out of at least $1,072,496.

## Negotiation of Stolen Checks

6.   It was further part of the scheme that defendants
SULEIMAN and HIMOUZ and their co-schemers stole and caused to be
stolen various checks payable to third parties.

7.   It was further part of the scheme that defendants forged
and caused to be forged the signatures of the payees on the back
of the stolen checks, typically including a non-existent driver's
license number under the forged signatures.

8.   It was further part of the scheme that from in or about
January through November 1999, defendants deposited and caused to
be deposited some of the stolen checks with forged endorsements
into accounts in the name of Chicago Furniture that defendants
had opened and caused to be opened at LaSalle National Bank and

Marquette National Bank, well knowing that they were not entitled to the funds from the deposited checks.

9. It was further part of the scheme that shortly after defendants deposited and caused the deposit of the stolen checks with forged endorsements into the Chicago Furniture accounts at LaSalle Bank and Marquette Bank, defendants withdrew the funds from the stolen checks by writing checks made payable to cash and to various entities and individuals, many of whom were related to defendants. The annotation "refund" typically was written on the memo line of the checks, even though the payees on the checks had not in fact made the purchases for which they were purportedly receiving refunds and were therefore not entitled to receive the money from Chicago Furniture.

10. It was further part of the scheme that defendants created and caused to be created fictitious invoices purporting to show that the recipients of the "refund" checks had purchased furniture from Chicago Furniture when no such purchases had in fact been made.

11. In total, defendants SULEIMAN and HIMOUZ defrauded and attempted to defraud LaSalle Bank and Marquette Bank out of hundreds of thousands of dollars by depositing stolen checks and withdrawing and causing the withdrawal of the stolen funds.

### Writing Checks Against Closed Accounts or Accounts With Insufficient Funds

12. It was further part of the scheme that from in or about July 2000 through in or about May 2002, defendants and their co-

7

schemers wrote and caused to be written numerous checks drawn on
Chicago Furniture's closed bank accounts at LaSalle Bank, Cole
Taylor Bank, and MidAmerica Bank, Chicago Land Furniture's closed
bank account at MidAmerica Bank, and defendant SULEIMAN's closed
account at Cole Taylor Bank, knowing that these accounts were
closed or there were insufficient funds in the accounts to cover
those checks.  The checks drawn on the closed Chicago Furniture,
Chicago Land Furniture, and Suleiman accounts were made payable
to Windy City Trading, Inc., Royal Furniture, District Furniture,
and Chicago Land Furniture.

13.  It was further part of the scheme that defendants and
their co-schemers deposited and caused to be deposited, and
attempted to deposit, these checks into defendants' accounts in
the name of Windy City Trading, Inc. at Fifth Third Bank, in the
name of Royal Furniture at Bank One, in the name of District
Furniture at LaSalle Bank and Charter One Bank, and in the name
of Chicago Land Furniture at MidAmerica Bank, knowing that either
there were insufficient funds in the accounts at LaSalle Bank,
Cole Taylor Bank, and MidAmerica Bank to cover those checks or
that these accounts were closed.

14.  It was further part of the scheme that from in or about
July 2000 through in or about May 2002, through depositing checks
and causing the deposit of checks as described above in
paragraphs 12-13, defendants knowingly caused the creation of
fictitious and fraudulently inflated balances in the Windy City
Trading account at Fifth Third Bank, the Royal Furniture account

at Bank One, the District Furniture accounts at LaSalle Bank and Charter One Bank, and the Chicago Land account at MidAmerica Bank.

15. It was further part of the scheme that as a result of the fraudulently inflated and fictitious balances, defendants caused Fifth Third Bank, Bank One, LaSalle Bank, MidAmerica Bank, and Charter One Bank to honor checks written on and cash withdrawals from the Windy City Trading, Royal Furniture, District Furniture, and Chicago Land furniture accounts, despite the fact that there were not funds in the accounts sufficient to cover the withdrawals. Through this conduct, defendants caused and attempted to cause Fifth Third Bank, Bank One, LaSalle Bank, MidAmerica Bank, and Charter One Bank to suffer losses in excess of $139,000.

## Credit Card Fraud

16. It was further part of the scheme that defendants used merchant terminals to steal money from certain of the victim banks.

17. It was further part of the scheme that from in or about November 1997 through in or about March 1999 defendants SULEIMAN and HIMOUZ opened and caused to be opened merchant accounts at various banks on behalf of the furniture stores they operated. Defendants would sometimes steal the identification information of various individuals and open the merchant accounts in the victims' names, without their knowledge or consent.

9

18. It was further part of the scheme that from in or about November 1997 through in or about March 2002, defendants and their co-schemers used and caused the use of the merchant terminals to process fictitious purchases by using credit card numbers belonging to former furniture store customers and others, well knowing that the card holders had not made or authorized the purchases represented by the merchant terminal entries.

19. It was further part of the scheme that defendants SULEIMAN and HIMOUZ caused the funds from the fictitious purchases to be wired from the merchant banks to accounts at the receiving banks, which they opened or caused to be opened on behalf of the furniture stores they operated.

20. It was further part of the scheme that by causing the deposit of funds in the bank accounts, defendants and their co-schemers knowingly caused the creation of fictitious and fraudulently inflated balances in the receiving bank accounts. Through this conduct, defendants caused and attempted to cause the merchant and receiving banks to suffer losses exceeding $578,496, as set forth below:

| Name of Merchant Bank | Date of Opening Merchant Account | Merchant Account Signers | Name on Merchant Account | Name of Receiving Bank | Date of Opening Receiving Account | Receiving Account Signers | Name on Receiving Account | Total Amount of Fraud |
|---|---|---|---|---|---|---|---|---|
| EFS National Bank | 9/19/97 | Individual B | Chicago Modern Furniture | LaSalle Bank | 7/29/97 | Ziyad Suleiman and Individual A | Chicago Modern Furniture | >$179,000 |
| EFS National Bank | 9/11/98 | Amal Himouz | Chicago Furniture | Archer Bank | 2/24/99 | Amal Himouz and Individual A | Chicago Furniture Corp. #2 | >$21,275 |
| Novus Bank | 3/98 | Amal Himouz | Chicago Furniture | LaSalle Bank | 1/27/98 | Ziyad Suleiman | Chicago Furniture Corp. | >$36,986 |
| Novus Bank | 10/99 | Victim A | Chicago Furniture | Archer Bank | 2/24/99 | Amal Himouz and Individual A | Chicago Furniture Corp. #2 | >$10,235 |
| CSI | 8/21/00 | Individual C | Chicago Furniture Trading Company | Archer Bank | 1/4/00 | Ziyad Suleiman and Amal Himouz | Chicago Furniture Corp. #2 | >$20,100 |
| Nova Bank | 11/00 | Victim B | Chicago Furniture Trading Company | Archer Bank | 1/4/2000 | Ziyad Suleiman and Amal Himouz | Chicago Furniture Corp. #2 | >$262,000 |
| CSI | 5/8/01 | Victim C | Royal Furniture | Archer Bank | 1/31/01 | Ziyad Suleiman and Amal Himouz | Royal Furniture | >$3,400 |
| Harris Bank | 9/01 | Victim D | Royal Furniture Outlet, Inc. | United Trust Bank | 8/10/01 | Amal Himouz | Royal Furniture Outlet, Inc. | >$24,000 |
| Harris Bank | 11/01 | Victim E | Chicago Land Furniture | MidAmerica Bank | 11/13/01 | Amal Himouz and Ziyad Suleiman | Chicago Land Furniture | >$8,000 |
| Woodforest National Bank | 2/02 | Victim F | District Furniture | Charter One Bank | 1/19/02 | Ziyad Suleiman and Individual A | District Furniture | >13,500 |

## Negotiation of Forged Checks

21.  It was further part of the scheme that defendants ZIYAD
SULEIMAN and AMAL HIMOUZ used or caused the use of Victim E's
identification information to obtain a Capital One business
credit card, without Victim E's knowledge or consent.

22.  It was further part of the scheme that defendants

obtained at least two starter checks from Victim E's bank account at Manufacturers Bank and forged or caused to be forged Victim E's name on the checks, without Victim E's knowledge or consent.

23.  It was further part of the scheme that from on or about August 1, 2001 through on or about August 3, 2001, defendant HIMOUZ and her co-schemers forged and caused to be forged approximately six Archer Bank starter checks in the names of Archer Bank account holders Victims G and H, made payable to Royal Furniture, without Victim G's and H's knowledge or consent.

24.  It was further part of the scheme that from in or about August 2001 through in or about November 2001, defendants deposited or caused the deposit of the forged checks in accounts at TCF Bank and Bank One opened by defendant HIMOUZ on behalf of Royal Furniture, well knowing that defendants were not entitled to the funds from the deposited checks.  Through this conduct, defendants caused and attempted to cause TCF Bank and Bank One to suffer losses exceeding $63,000.

25.  It was further part of the scheme that defendants did misrepresent, conceal, and hide, and cause to be misrepresented, concealed and hidden, the true purposes of the acts done in furtherance of the scheme."

26.  On or about January 20, 1999, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

                    ZIYAD SULEIMAN and
                    AMAL HIMOUZ,

12

defendants herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by writing or causing the writing of a Chicago Furniture "refund" check dated January 20, 1999, numbered 1027, made payable to "Amal Himouz" in the amount of $5,900, drawn from funds generated by stolen checks that had been deposited into the Chicago Furniture account;

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWO

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1.   Paragraphs 1-25 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.   On or about November 22, 1999, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

AMAL HIMOUZ,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by negotiating and causing the negotiation of a Chicago Furniture "refund" check dated November 22, 1999, numbered 1220, made payable to Individual B in the amount of $3,000, drawn from funds generated by stolen checks that had been deposited into the Chicago Furniture account;

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT THREE

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1.  Paragraphs 1-25 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.  On or about August 2, 2000, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZIYAD SULEIMAN and
AMAL HIMOUZ,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by negotiating and causing the negotiation of a Chicago Furniture Corp. check dated August 2, 2000, numbered 1005, made payable to Windy City Trading in the amount of $1,901, drawn against a closed Chicago Furniture account at LaSalle Bank;

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT FOUR

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1.   Paragraphs 1-25 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.   On or about July 25, 2001, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZIYAD SULEIMAN and
AMAL HIMOUZ,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by negotiating and causing the negotiation of a check dated July 25, 2001, numbered 1009, made payable to Royal Furniture in the amount of $4,258, drawn against defendant SULEIMAN's closed account at Cole Taylor Bank;

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT FIVE

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1.  Paragraphs 1-25 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.  On or about December 1, 2001, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZIYAD SULEIMAN and
AMAL HIMOUZ,

defendants herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by using and causing the use of a Chicago Land Furniture merchant terminal to process a fictitious purchase in the amount of $785.03, using MBNA credit card number 5490 9955 6514 0602, in the name of Victim I, a former Royal Furniture customer, without Victim I's knowledge or consent;

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT SIX

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1.    Paragraphs 1-25 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.    On or about September 13, 2001, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZIYAD SULEIMAN and
AMAL HIMOUZ,

defendants herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by using and causing the use of a Royal Furniture merchant terminal to process a fictitious purchase in the amount of $1,391.92, using MBNA credit card number 5490 9943 7319 3614, in the name of Victim J, a former customer of Royal Furniture, without Victim J's knowledge or consent;

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT SEVEN

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1.   Paragraphs 1-25 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.   On or about September 13, 2001, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

                    ZIYAD SULEIMAN and
                    AMAL HIMOUZ,

defendants herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by negotiating and causing the negotiation of a starter check dated November 1, 2001, made payable to Royal Furniture in the amount of $5,274.36, drawn against a Manufacturers Bank account in the name of Victim E;

In violation of Title 18, United States Code, Sections 1344 and 2.

19

## COUNT EIGHT

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1.   Paragraphs 1-25 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.   On or about August 1, 2001, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZIYAD SULEIMAN and
AMAL HIMOUZ,

defendants herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by negotiating and causing the negotiation of a starter check dated August 1, 2001, made payable to Royal Furniture in the amount of $3,500, drawn against an Archer Bank account in the name of Victim G;

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT NINE

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

On or about January 19, 1999, at Chicago, in the Northern District of Illinois, Eastern Division,

### ZIYAD SULEIMAN,

defendant herein, knowingly made, uttered, or possessed and caused to be made, uttered, or possessed, a forged security of an organization with intent to deceive another organization, namely check number 144551, made payable to "The Meyne Co.," in the amount of $3,214, drawn on a First National Bank of Chicago account of the University of Chicago;

In violation of Title 18, United States Code, Sections 513(a) and 2.

## COUNT TEN

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

On or about November 23, 1999, at Chicago, in the Northern District of Illinois, Eastern Division,

### ZIYAD SULEIMAN,

defendant herein, knowingly made, uttered, or possessed and caused to be made, uttered, or possessed, a forged security of an organization with intent to deceive another organization, namely check number 0000304999, made payable to "Household Finance Corporation," in the amount of $81,587.25, drawn on a Mellon Bank account of PrimeCo Personal Communications;

In violation of Title 18, United States Code, Sections 513(a) and 2.

## **FORFEITURE ALLEGATIONS**

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1.  The Grand Jury realleges and incorporates by this reference paragraphs 1 through 25 of Count One of this indictment for the purpose or alleging forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.  As a result of committing one or more offenses that Counts One through Eight of this indictment allege, defendants

ZIYAD SULEIMAN and
AMAL HIMOUZ,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of offenses, including but not limited to $1,072,496.

3.  If any of the property or funds described above as a result of any act or omission of the defendants:

  (a)  Cannot be located upon the exercise of due diligence;

  (b)  Has been transferred or sold to, or deposited with, a third party;

  (c)  Has been placed beyond the jurisdiction of the court;

  (d)  Has been substantially diminished in value; or

  (e)  Has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to the provisions of 21 U.S.C. § 853(p), to seek forfeiture of substitute property belonging to the defendant.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461.

A TRUE BILL

_____

FOREPERSON

_____
UNITED STATES ATTORNEY

24